UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID LEWIS,

    Plaintiff,

v.

LKQ CORPORATION d/b/a LKQ PICK YOUR
PART — ST. LOUIS,
a corporation,

    Defendant.

Case No. 3:24-cv-97-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on a motion to Remand. (Doc. 11). The Plaintiff filed the motion on January 23, 2024. Finding that the Plaintiff and Defendant are both citizens of Illinois, there is no diversity of citizenship and, therefore, this Court lacks subject matter jurisdiction. Accordingly, this Court **GRANTS** the motion (Doc. 11) and **REMANDS** this case to St. Clair County Circuit Court, without costs.

**I.    BACKGROUND**

    **a.  Procedural History**

On November 19, 2015, the Plaintiff, Lewis, was injured at his workplace. (Doc. 11). Lewis required years of medical and dental treatment, provided through his previous employer under the Longshore and Harbor Workers' Compensation Act, codified as 33 U.S.C. § 901 *et seq.* (*Id.*). Eventually, Lewis changed employers and began working for the Defendant, LKQ Corporation ("LKQ"). Lewis left work early to attend an appointment related to his previous workplace injury and was allegedly unlawfully terminated. (*Id.*).

Lewis filed this lawsuit in state court on November 30, 2023, (Doc. 1, Ex. A). On January

1

12, 2024, LKQ filed a notice of removal. (Doc. 1). In that notice of removal, LKQ claimed that the amount in controversy exceeded $75,000 and that the parties were completely diverse. (*Id.*). LKQ claimed that they were incorporated in Delaware, their principal place of business is in Tennessee, and that Lewis is a citizen of Illinois. Lewis filed a Motion to Remand. (Doc. 11). Lewis argued that there was no diversity of citizenship because LKQ's principal place of business is in Illinois—not in Tennessee. (Doc. 22). Additionally, Lewis argued that LKQ's principal place of business has always been in Illinois, LKQ lacked an objectively reasonable basis for removal, and, therefore, the Court should award costs upon remand. (*Id.*).

LKQ responded opposing remand, (Doc. 21), and Lewis replied renewing their request for remand. (Doc. 22). Given the issue of remand is a threshold issue, an unopposed motion to stay the deadline to respond to the complaint was filed. (Doc. 13). Accordingly, the Court entered a stay until the issue of subject matter jurisdiction could be resolved. (Doc. 20).

### b. LKQ's Principal Place of Business

While there is a dispute over LKQ's principal place of business currently, prior to 2024, both parties agree that LKQ's principal place of business was at their headquarters in Chicago, Illinois. However, in 2019, LKQ opened a large facility in Antioch, Tennessee and "began . . . shifting its primary business operations to Tennessee." (Doc. 21). LKQ dubbed its Antioch location its "North American Headquarters" yet, LKQ's principal place of business "remained [in] Chicago, Illinois," at their established headquarters. (*Id.*). From 2019 to 2024, LKQ saw their North American Headquarters grow, evincing an intentional transition from Chicago to Antioch as their principal place of business; however, according to LKQ, that change was incomplete until November 27, 2023.

On November 27, 2023,[1] LKQ's President and CEO, Dominick Zarcone, announced that he planned to retire in June of 2024. Consequently, LKQ's "Board of Directors appointed an Antioch, Tennessee-based employee[:] Justin Jude . . . to the role of Executive Vice President and Chief Operation Officer effective January 1, 2024." (*Id.*).[2] Jude was the Senior Vice President of Operations / President of Wholesale for LKQ's North America segment. *Leadership*, LKQ Corp. (last visited Mar. 28, 2024), https://investor.lkqcorp.com/governance/leadership/default.aspx [https://web.archive.org/web/20230709112617/https://investor.lkqcorp.com/governance/leadership/default.aspx] (Archived on Jul. 9, 2023, 11:26 AM) (hereinafter "*Archived LKQ Leadership Webpage*, (Jun. 9, 2023)").

Currently, LKQ's website lists their Chicago location as their "Headquarters" and their Antioch location as their "North American Headquarters."[3] LKQ, https://www.lkqcorp.com/ (last visited Mar. 28, 2024) (scroll to the bottom of the webpage; then examine the left side of the screen under "LKQ: Keeping you moving."). As of January 1, 2024, LKQ has ten executive officers: four in Tennessee, four in Illinois, one in Texas, and one in Europe. (Doc. 21).

The officers currently in Tennessee are Jude (Executive Vice President and Chief Operating Officer), Rick Galloway (Senior Vice President and Chief Financial Officer), Genevieve Dombrowski (Senior V.P. of Human Resources), and John Menke (Senior V.P. of

---

[1] Though the LKQ's filings do not give the specific date of the announcement GlobalNewswire published an article on the change on November 27, 2023. *LKQ Corporation Announces Executive Leadership Succession Plan*, GLOBALNEWSWIRE (Nov. 27, 2023). This article was cross-posted to LKQ's website for investors on the same day. LKQ Corporation Announces Executive Leadership Succession Plan, LKQ CORP. (Nov. 27, 2023) https://investor.lkqcorp.com/news/news-details/2023/LKQ-Corporation-Announces-Executive-Leadership-Succession-Plan/default.aspx.

[2] While their filing refers to this individual—Justin Jude—as an employee, before the Board selected him to succeed LKQ's out-going President and CEO, Jude was the Senior Vice President of Operations / President of Wholesale for North America and, therefore, is more appropriately described as an officer of the corporation. *Id.*

[3] Though Lewis claims that LKQ's Chicago Headquarters are their "global headquarters," (Doc. 22), and LKQ is a global company, LKQ has always referred to their Chicago location as simply their "Headquarters" and their Antioch location as their "North American Headquarters."

LKQ Corporation and President of Wholesale North America—Jude's previous position). (*Id.*). *Leadership*, LKQ CORP., https://investor.lkqcorp.com/governance/leadership/default.aspx (last visited Mar. 28, 2024) (hereinafter "*LKQ Leadership Webpage*").

The officers currently in Illinois are Matthew McKay (Senior V.P., General Counsel, & Corporate Secretary), Michael Clark (V.P. – Finance & Controller), Michael T. Brooks (Senior V.P. – Global Information Officer), and Walter Hanley (Senior V.P. of Development). The officer in Europe, the Court infers, is Andy Hamilton (Senior V.P. of LKQ Corporation and President and Managing Director of LKQ Europe). (Doc. 11, Ex. 9). *LKQ Leadership Webpage*. The officer currently in Texas is Zarcone, the outgoing President and CEO. (Doc. 21). While Zarcone currently works out of a home office in Texas, before his announced retirement, Zarcone worked at the Chicago office. (*Id.*). LKQ states that as of January 1, 2024, all executive officers report to Jude and that he has authority to override all other executive decisions, save for Zarcone's. (*Id.*).

Before January 1, 2024, the position of Executive V.P. and C.O.O. did not exist,[4] and John Menke was not an officer of the corporation. *Archived LKQ Leadership Webpage*, (Jun. 9, 2023). Therefore, before January 1, 2024, three officers worked in Tennessee and five officers worked in Illinois. *Id*. The officer duties assigned to Antioch were Senior V.P. of Operations / President of Wholesale North America, C.F.O., and Human Resources. The officer duties assigned to Chicago were C.E.O., President, Global Information, Development, General Counsel, Corporate Secretary, and Finance & Controller.[5] *Id*.

---

[4] The position of "Senior V.P. of Operations / President of Wholesale North America" did exist, but it is unclear whether this title referred to North American or global operations. *Archived LKQ Leadership Webpage*, (Jun. 9, 2023).
[5] With the exception of one officer (Michael Clark, V.P. – Finance & Controller), all officers also held the title of "Senior V.P." of their respective departments. *Id.*

## II. LEGAL STANDARD

Federal courts have limited jurisdiction. Actions commenced in state courts can be removed to federal court if they are within a federal court's original jurisdiction or, alternatively, if the amount in controversy exceeds $75,000 and each plaintiff is diverse from each defendant. If a plaintiff and a defendant are citizens of the same state, the parties are not diverse, a federal court lacks subject matter jurisdiction, and must either dismiss the case or, if the case has been removed, remand it. The citizenship of natural persons is based on their domicile. In contrast, a corporation's citizenship is based on their state of incorporation and their principal place of business.

Previously, courts employed differing tests to determine a corporation's principal place of business. The Supreme Court laid out a clearer test in *Hertz v. Friend*, 559 U.S. 77 (2010). In *Hertz* the Supreme Court clarified that a company's principal place of business is their "nerve center . . . the center of overall direction, control, and coordination." *Id.* at 95–96.

> In practice it should normally be the place where the corporation maintains its Headquarters—provided that the Headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings.

*Id.* at 78.

Analogizing the "nerve center" to a brain, the Supreme Court emphasized it is the decision-making apparatus, not the bulk of business activities or business presence that matters. *Id.* at 96 ("[I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."). While a S.E.C. form listing a principal place of business is some evidence for identifying a company's principal place of business "the mere filing of [such] a form . . . listing a corporation's 'principal executive offices' would, without more, be

5

[in]sufficient proof to establish a corporation's 'nerve center.'" *Id.* at 97.

Diversity is determined at the time the suit was filed *and* at the time the action is removed. 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (Rev. 4th ed. 2023). If a party is not diverse at the commencement of the action but is diverse at the time of removal, removal is improper. *Id*. "[A] corporation's principal place of business must be based on the location of corporate activities at the time [the] suit is instituted." *Id.* § 3625. If a corporation's principal place of business is contested, "the burden of proving the existence of diversity jurisdiction . . . rests upon the [removing] party." *Id. Hertz*, 559 at 96 ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). When diversity is disputed, each party must support their position "by competent proof." *Hertz*, at 96–97.

### III.    ANALYSIS

#### a.    Principal Place of Business

Both parties agree that LKQ was headquartered and had its principal place of business in Chicago, Illinois for some time. Beginning in 2019, LKQ began transitioning their principal place of business from Chicago, Illinois, to Antioch, Tennessee. If LKQ's principal place of business was in Chicago, Illinois, there is no diversity and the Court must remand; if their principal place of business was in Antioch, Tennessee, there is diversity and the Court must deny remand.

LKQ asserts that their principal place of business was "in Chicago, Illinois . . . . [T]hat changed, however, when LKQ's Board of Directors appointed [Justin Jude as] Executive Vice President and Chief Operating Officer *effective January 1, 2024*." (Doc 21) (emphasis added). It is unclear whether LKQ is arguing that their principal place of business changed on November

27, 2023—when their Board of Directors *announced* that they were going to appoint Jude—or that their principal place of business changed on January 1, 2024—when Jude's appointment became *effective*.[6]

If LKQ is arguing the latter—that their principal place of business did not change from Chicago to Antioch until January 1, 2024—then they have forfeited. This suit was initiated before January 1 and diversity of citizenship is assessed at the time the lawsuit is initiated. Thus, arguing that their principal place of business did not change until January 1 concedes that their principal place of business remained in Chicago and, consequently, there is no diversity. Therefore, LKQ must be arguing the former—that the announcement on November 27, 2023, *itself* completed the transition from Chicago to Antioch. Regardless, both parties agree that LKQ's principal place of business was in Chicago before November 27, 2023.

In summary, because diversity is assessed at the time the suit was initiated, the key issue here is LKQ's principal place of business *on November 30*, 2023. As LKQ states that its principal place of business was in Chicago *before November 27*, 2023, LKQ, as the removing party, bears the burden of showing by competent proof that their principal place of business changed in the three days from November 27 to November 30.

LKQ has failed to meet that burden.

LKQ conflates the announcement on November 27, 2023, with the effective date of those changes on January 1, 2024. However, just as a new presidential administration takes power *only* after the stroke of noon on January 20[7]—not after all the votes are tallied on Election Night nor when the joint session of Congress certifies the winner of the electoral college; LKQ's new

---

[6] LKQ references some changes that occurred after an announcement in December 2023. This December update, however, sheds no light on any events that may have taken place between November 27 and November 30. Therefore, the details of the December update are irrelevant.

[7] "[T]he terms of the President and Vice President shall end at noon on the 20th day of January … and the terms of their successors shall then begin." U.S. CONST. Amend. XX.

7

administration, likewise, took power *only* after the stroke of midnight on January 1—not after the Board announced that Jude would become Executive Vice President and C.O.O., nor when Zarcone announced his plan to retire in eight months. Conflating the announced changes with the changes themselves is erroneous. Therefore, the announcement itself is not competent proof that shows LKQ's principal place of business changed from Chicago to Antioch.

 A re-examination of LKQ's filings yield no evidence or proof that any changes took place between November 27 and November 30, let alone sufficient changes that would complete the transition of LKQ's principal place of business. In fact, on the same day Lewis filed this lawsuit, LKQ filed a form with the S.E.C. stating that their principal executive offices were in Chicago. (Doc. 11, Ex. 9). While an S.E.C. filing that lists a corporation's executive offices in a particular location is insufficient to establish a company's principal place of business on its own, the filing cuts against LKQ's argument that their principal place of business changed from November 27 to November 30. Additionally, to this day, LKQ still lists their Chicago location as their "Headquarters," and still places the information for their Chicago Headquarters above the information for their "North American Headquarters" on their website. LKQ, https://www.lkqcorp.com/ (last visited Mar. 28, 2024) (scroll to the bottom of the webpage; then examine the left side of the screen under "LKQ: Keeping you moving.").

 A company's principal place of business is ordinarily its headquarters. While simply naming a location their "headquarters" is not enough to establish a company's principal place of business, LKQ's Chicago Headquarters was far from a simple office that would hold the occasional board meeting; it retained a significant number of employees and officers that were assigned duties essential to the continued operation of the company.

 As the removing party LKQ bears the burden of showing diversity. Because LKQ has

8

admitted that their principal place of business was in Chicago, Illinois, before November 27 and failed to show by competent proof that their principal place of business changed from Chicago to Antioch before this suit was filed on November 30; LKQ has failed to meet their burden. Additionally, there are multiple indicators—such as calling their Chicago location their headquarters, the significant presence at the Chicago Headquarters, and their filings with the S.E.C.—that cumulatively support Lewis's argument that LKQ's principal place of business was still in Chicago when he filed this lawsuit. Therefore, the Court finds that LKQ's principal place of business was at their Chicago Headquarters. Accordingly, there is no diversity of citizenship and the case must be remanded.

      **b. Costs upon Remand**

When remanding a case, the Court retains the power to award costs to the moving party incurred as a result of the improper removal "where the removing party lacks an objectively reasonable basis for seeking removal." See *Jackson County Bank v. Du Sablon*, 915 F.3d 422, 424 (7th Cir. 2019) (citations omitted).

Here, removal was certainly improper and LKQ has failed to adequately articulate a viable argument for removal, let alone support their position with competent proof. However, LKQ appears to be in the final stages of a multi-year long transition from Chicago to Antioch. This, combined with the undoubted de facto transition from Zarcone to Jude—to borrow from the earlier analogy, similar to the de facto transition from an outgoing President and a President-elect—the Court declines to find that LKQ lacked an objectively reasonable basis for seeking removal. Accordingly, the Court will not award costs on remand.

### IV. CONCLUSION

Because the Defendant has failed to meet the burden necessary to establish diversity of citizenship, and the Plaintiff has supported their argument for lack of diversity by competent proof, the Court hereby **GRANTS** Lewis's Motion to Remand. (Doc. 11). The Court **REMANDS** this case back to St. Clair County Circuit Court, without costs.

**IT IS SO ORDERED.**
**DATED:  April 3, 2024**

*s/ J. Phil Gilbert*_____
**J. PHIL GILBERT**
**DISTRICT JUDGE**